# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GRAHAM & ASSOCIATES LLP
Anthony G. Graham (State Bar No.148682)
2901 West Coast Highway, Suite 200
Newport Beach, California 92663
Tel. (949) 270-2792
Fax. (949) 270-2793
Cell: (714) 209-5640
anthonyggraham@msn.com
Attorneys for Plaintiffs
Beverly Moistner
Todd Moistner

VENTURA
SUPERIOR COURT
**FILED**

MAR 0 8 2021

MICHAEL D. PLANET
Executive Officer and Clerk
BY:_____, Deputy

**MARIANA SUAZO**

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF VENTURA

| | |
|---|---|
| BEVERLY MOISTNER AND TODD MOISTNER<br><br>Plaintiffs,<br><br>vs.<br><br>AEROJET ROCKETDYNE INC.; THE BOEING COMPANY AKA BOEING NORTH AMERICA, INC. AND DOES 1-100,<br><br>Defendants. | CASE NO.   56-2021-00551733-CU-PO-VTA<br><br>COMPLAINT FOR:<br><br>1. PUBLIC NUISANCE;<br>2. PRIVATE NUISANCE;<br>3. STRICT LIABILITY FOR ULTRA HAZARDOUS ACTIVITY;<br>4. NEGLIGENCE;<br>5. NEGLIGENCE PER SE;<br>6. TRESPASS;<br>7. VIOLATIONS OF BUSINESS AND PROFESSIONS CODE 17200 [UNLAWFUL];<br>8. VIOLATIONS OF BUSINESS AND PROFESSIONS CODE 17200 [UNFAIR].   By FAX |

As and for the causes of action against defendants AEROJET ROCKETDYNE INC.,

THE BOEING COMPANY aka BOEING NORTH AMERICA, INC. and DOES 1-100, Plaintiff

BEVERLY MOISTNER and Plaintiff TODD MOISTNER allege as follows:

**GENERAL ALLEGATIONS**

1.      All allegations in this Complaint are based upon information and belief except for those

allegations which pertain to the Plaintiffs named herein.   Plaintiffs' information and belief is

1   based upon, *inter alia*, the investigation conducted to date by the Plaintiffs.  Each allegation in

2   this Complaint either has evidentiary support or is likely to have evidentiary support after a

3   reasonable opportunity for further investigation and discovery.

4                   **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

5

6        2.        This action is brought pursuant to California Code of Civil Procedure §382 and

7   Business and Professions Code §17200 *et seq.*

8                                   **THE PARTIES**

9        3.        Plaintiff BEVERLY MOISTNER is, and at all relevant times has been, a resident

10  of Ventura County. She owns and occupies her home located in Bell Canyon, Ventura County at

11  119 Dapplegray Road, West Hills, California 91307.  The land in the development was

12  purchased in 1969.  The construction of the Moistner home was started in 1978 and completed in

13  1981. Plaintiffs moved into the house in 1981.   Beverly Moistner is currently retired and has

14  lived at the house since 1981.  Todd Moistner lived at the house until his eighteenth birthday in

15  1983 and then resumed his residency in 2015. He is currently employed.  The property is situated

16  directly below and within five miles of the Rocketdyne Facility. Plaintiff Beverly Moistner has

17  suffered from two serious diagnosed cancers: shin cancer on her face and lips and  squamous

18  cell carcinoma of the mandible part of left jaw. As part of the treatment for the cancer of the jaw

19  in 2020 the surgeon removed a large portion of the left side of her jawbone and six teeth. As part

20  of that surgery the surgeon took a portion of the bone in her left leg and used that material to

21  replace her jaw and inserted a metal plate. As a consequence of this major surgery Plaintiff

22  Beverly Moistner suffered a leg infection, edema, mouth sores and mouth and neck numbness

23  which are ongoing. Plaintiff Todd Moistner has been diagnosed with a carcinoma in the colon

24

25

26

27

28                                      - 2 -

PRINTED ON
RECYCLED PAPER

1    and has had that removed by surgery. The family has since 1981 had four dogs as companions

2    and each pet has died of cancer.

3        4.    Defendants AEROJET ROCKETDYNE INC. (hereinafter referred to as

4    Defendant or "ROCKETDYNE") is and at all times mentioned herein has been a company firm

5    authorized to do business in the State of California.

6

7        5.    Defendant THE BOEING COMPANY through its wholly owned entity Boeing

8    North American, Inc. (hereinafter referred to collectively as "Boeing"), a company formed from

9    the December 1996 merger of Boeing and Rockwell International Corporation's ("Rockwell")

10   defense and aerospace businesses. The Boeing Company is incorporated in Seattle, Washington.

11   Its executive offices and principal place of business are located at Seattle, Washington.

12   Rockwell, formerly a Delaware corporation, maintains its headquarters at 2201 Seal Beach

13   Boulevard in Seal Beach, California. Rockwell and its successor Boeing (collectively referred to

14   herein as "Boeing" or "defendant") research, develop, and manufacture products for the

15

16   aerospace, defense,  electronics and automotive industries. Rocketdyne was formerly a division

17   of Rockwell and is now a division of Boeing. Rocketdyne's predecessor, North American

18   Aviation, opened the Santa Susana field lab in 1946. Over the years, Rocketdyne has tested

19   prototypes for nearly every rocket engine used in the U.S. Space Program. Rocketdyne served as

20   the principal operator of the facility from 1946, when the facility opened, to the present.

21   Defendant is currently engaged in state and federal mandated ongoing cleanup efforts at and

22   around the facility as a direct and proximate result of its hazardous operations of the Rocketdyne

23

24   Facility as alleged herein.

25       6.    Plaintiffs are ignorant of the true names and capacities of defendants sued as

26   DOES 1- 100, inclusive, and therefore sue these defendants by such fictitious names.  The

27

28                                          - 3 -

fictitious defendants named in this Complaint are sued pursuant to the provisions of C.C.P. § 474. Plaintiffs are informed and believe, and upon that ground, allege that each fictitious defendant is in some way responsible for, participated in, or contributed to the matters and things of which Plaintiffs complain herein, and in some fashion, has legal responsibility therefor. When the exact nature and identity of such fictitious defendants' responsibility for, participation in, and contribution to the matters and things alleged herein are ascertained by Plaintiffs, Plaintiffs will seek to amend this Complaint and all proceedings herein to set forth the same.

7.      At all times mentioned defendants were each a person within the meaning of Business & Professions Code § 17201.

**GENERAL ALLEGATIONS**

8.      Plaintiffs seeks relief for the physical harm suffered by each of them  as a direct and proximate result of the operation of the Rocketdyne Division Santa Susana Field Laboratory (hereinafter, the "Rocketdyne Facility") located near Chatsworth and Simi Valley in Ventura County, California, and the spills and releases of hazardous radioactive and non-radioactive toxic substances including, but not limited to, plutonium, uranium, radioactive isotopes cesium and tritium and carcinogenic chemical compounds, including hexavalent chromium and trichloroethylene (TCE), as well as other toxic solvents, into the environment and into the air, soil and ground water. Plaintiffs have been significantly exposed to the known hazardous radioactive and toxic substances released into the environment by defendants from the Rocketdyne Facility and seeks damages for the personal injury suffered by each of them, the diminution in the value of their property  and corresponding lowering  of value, compensatory and punitive damages together with attorneys' fees and legal costs and interest to the extent allowable by law, and such other and further relief as may be just and equitable.

-4-

PRINTED ON
RECYCLED PAPER

9.     Plaintiff Beverly Moistner has suffered serious and ongoing injury to her person, a lowering of the value of her real property, other economic harm and losses, and a corresponding loss of her enjoyment of her real property by virtue of 1) the spills and releases of radiation, radioactive isotopes including cesium and tritium, and other toxic solvents including, but not limited to, hexavalent chromium, trichloroethylene ("TCE"), hydrazide, and other hazardous substances into the environment from the Rocketdyne Facility, 2) the actual or ongoing contamination of her property, 3) the proximity of her property to the Rocketdyne Facility, 4) the actual and ongoing health hazards posed to her by the Rocketdyne Facility; and 5) the ongoing contamination of the air at her property due to the present cleanup and land moving procedures conducted by the Defendant.

10.     Boeing is one of the country's leading aerospace concerns. Boeing's Rocketdyne division is engaged primarily in the business of research, development and testing of rocket engines, lasers, nuclear reactors and other related technologies. Rocketdyne manufactured the Space Shuttle's main engines as well as the Atlas and Delta rocket engines used to propel satellites into space. A substantial amount of defendant's past revenues and profits have come from defense contract work for NASA. Rocketdyne's operations are and were conducted at the Santa Susana Field Laboratory in Simi Hills, California. Rocketdyne has owned and operated this high security facility on rocky terrain covering 2,668 acres in the Santa Susana Pass in the eastern portion of Ventura County since the 1940's. The open-air laboratory is situated in the hills above Chatsworth and Simi Valley, that is directly proximate to Plaintiffs' home in Bell Canyon which is part of the Simi hills.

11.     At all times relevant hereto, operations at the Rocketdyne Facility have involved the use and/or generation of vast amounts of radioactive materials, including plutonium,

- 5 -

uranium, tritium and cesium, which materials constitute source, special nuclear, or byproduct materials as defined in the Atomic Energy Act 42 U.S.C. Section 2011 et seq. Plutonium is a powerful carcinogen with a half-life of 20,000 years and is one of the most hazardous substances known to science. Operations at the Rocketdyne Facility also have involved widespread use of other toxic and hazardous materials and dangerous chemical processes.  The non-radioactive hazardous chemicals include, but are not limited to, hexavalent chromium, a highly potent known carcinogen, and such volatile organic compounds as TCE, oxidizers, kerosene-based fuels, liquid metals, asbestos, PCB's and hydraulic oil. In addition to spent rocket engine fuel, many of the chemicals used were industrial solvents used for cleaning manufactured spacecraft parts.  Many of the spent chemicals used in the operations at Rocketdyne were "hazardous waste" as defined by 40 C.F.R. 261. The radioactive and non-radioactive hazardous wastes and other pollutants generated by Rocketdyne are regulated by numerous environmental, health and safety statutes and regulations and DOE policies, orders and regulations, including, but not limited to: the Atomic Energy Act, 42 U.S.C. Section 2201 et seq. 24 II (radioactive solid wastes and radioactive liquid effluents); the Clean Air and Water Act, 42 U.S.C. 25 II Section 7401 et seq. (air emission, both radioactive and non-radioactive); the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. Section 6901 et seq. (solid non-radioactive 27 II and radioactive/non-radioactive mixed wastes); the Refuse Act (Rivers and Harbors Act of 1899), 33 28 II U.S.C. Section 407; and CERCLA, 42 U.S.C. Section 9601 et seq. (non-radioactive hazardous substances).

12.     At all relevant times, 42 U.S.C. §6925 (a) of the RCRA: (I) prohibited the operation of any hazardous waste "facility" without a permit issued by the United States

- 6 -

Department of Environmental Protection ("EPA"), and (ii) made the operation of a hazardous waste facility without the requisite permit a felony.

13.     At all times relevant hereto, Rocketdyne was a hazardous waste "facility" subject to RCRA, and defendant was the "owner" of the Rocketdyne hazardous waste facility as defined by C.F.R. 260.10. Accordingly, in order to operate the Rocketdyne hazardous waste facility, defendant was required to obtain a Part A Permit from the EPA.

14.     After World War II ended, Rocketdyne held contracts with the U.S. Atomic Energy Commission and its successor, the Department of Energy, to operate experimental nuclear reactors at the Rocketdyne Facility.

15.     Rocketdyne operated 16 small nuclear reactors and a "hot lab" for handling radioactive fuel between the 1950's and the 1980's. At the time that Plaintiff Beverly Moistner purchased the land and constructed the house she had no knowledge of the extent of the contamination since the facility was operated in secrecy. The nuclear testing stopped in 1990. During the course of these four decades of nuclear testing, unbeknownst to homeowners such as Plaintiff Beverly Moistner who were neighbors and residents such as Plaintiff Todd Moistner to the high security facility, studies indicate a number of releases and other "accidents" and practices at the Rocketdyne Facility caused cesium, tritium and other radioactive elements to leak into the water and ground beneath the research site and then be released into the air as fine particle dust.

16.     Soil samples taken off site and in the surrounding communities where Plaintiffs reside show traces of radioactive isotopes and carcinogenic chemicals in the soil, ground water and portions of the Los Angeles River. Tests conducted by defendant in 1991 on the soil and groundwater of the Brandeis-Bardin Institute, located adjacent to the Rocketdyne facility,

- 7 -

PRINTED ON
RECYCLED PAPER

confirmed off site contamination. In addition, several partial meltdowns of the reactors which occurred in the 1950's caused dangerous levels of radiation to be released into the atmosphere and in turn settle into the soil to be released again as part of the not infrequent Santa Susana wind- storms which occur in the Bell Canyon area.

17.     Until at least July 26, 1994, well after Plaintiffs were residing in the house, Rocketdyne continued to treat, store and dispose of hazardous mixed wastes and to discharge hazardous wastes into water and ground water in violation of RCRA, the Clean Water Act, 33 U.S.C. Section 1251, and the Safe Drinking Water Act. Defendant continues to discharge hazardous wastes around the Rocketdyne Facility in violation of RCRA.

18.     Many of the releases alleged herein have been and continue to be airborne releases. Hazardous radioactive and non-radioactive substances were released into the air, either as vapors or in the form of particles of the order of microns in size and were transported to the environment surrounding the Rocketdyne Facility by the winds in dispersal patterns depending in part on the meteorological conditions prevailing at the time of each release. The sources of such airborne releases have included volatilization from spills, resuspension of dust and droplets from past spills, direct airborne releases not captured by vents, evaporation and wind causing escape from contaminated holding tanks, direct burning of hazardous materials, and accidental fires. In addition, radioactive and non-radioactive hazardous substances are known to have and continue to contaminate ground and surface water as a result of significant releases from the Rocketdyne Facility.

19.     There have been numerous releases of hazardous substances from the Rocketdyne Facility since Plaintiff Beverly Moistner purchased the land. Due to a lack of funds, Rocketdyne went unmonitored by the EPA for much of this time and was left to monitor itself. Thus, most of

- 8 -

these releases have gone unreported and undocumented. A preliminary study of past accidents at the Rocketdyne Facility which was conducted in 1980 indicated the following "known" reactor accidents:

a.    On March 25, 1959, fission gas was released from reactor AE-6 contaminating a containment room and several members of the operating staff.  The reactor reportedly scrammed due to improper operating procedures which allowed it to reach double its maximum allowable power.

b.    On July 13, 1959, Reactor SRE had a "power excursion". The reactor's power increased uncontrollably - a serious sign of malfunction. Despite this problem, the reactor was negligently started up again two hours later. An Atomics/Energy Commission ("AEC") report concluded: "It is quite clear that the reactor should have been shut down and the problems solved properly. Continuing to run it in the face of a known tetralin leak, repeated scrams, equipment failures, rising radioactive releases, and unexplained transient effects is difficult to justify. Such emphasis on continued operation can and often does have serious effects on safety and can create an atmosphere leading to serious accidents."

c.    Just weeks thereafter, the very same reactor, SRE, suffered a partial meltdown. Thirteen of the 43 fuel elements melted. Ten thousand curies of radiation were released mostly into the coolant, and radioactive gases xenon and krypton were slowly released into the atmosphere over a year's period. The extent of the release to the environment could not be measured since some of the 611 radiation monitors went off scale during parts of the "accident", others malfunctioned, a device to automatically route high radioactivity to storage tanks didn't work, and some of the monitors were incapable of measuring xenon and krypton since they are noble gases.

PRINTED ON
RECYCLED PAPER

d.      Another meltdown occurred in 1964 where a reactor for the space program, reactor SNAP-8, suffered melting in 80% of the fuel rods resulting in a substantial release of fission products into the environment.

20.     In addition to the "known" reactor accidents which have occurred at Rocketdyne, there were a number of non-reactor accidents which have caused radiation to be released into the groundwater, soil and air and carried in large quantities to the surrounding neighborhoods and communities where Plaintiffs reside.

21.     On June 4, 1959, a fuel rod exploded. The rod, dripping with sodium, was washed with water in a "wash cell." Sodium explodes in the presence of water. The explosion created a "pressure surge" that created an extremely high contamination level within the entire building. Air from the building was vented to the atmosphere thus resulting in yet another radioactive release into the environment and the surrounding communities. Again, in 1960, a radioactive pipe from a reactor was taken outdoors to be decontaminated. With populated sections of the valley in view, the pipe exploded and was blown off of a forklift and across a ravine releasing further radiation into the environment. Also, in the same time period, there was a tetrolin explosion at the Facility. Tetrolin, the coolant responsible for causing the SRE reactor partial meltdown, was stored in a sodium lab and, while in storage, exploded, igniting the sodium. The blast gutted the interior of the building and released more hazardous materials into the environment.

22.     This was only one of several sodium fires at Rocketdyne's open-air field laboratory, including a significant one which occurred on May 19, 1971, and which exposed Plaintiff's land to various degrees of radiation. Sodium is highly flammable and is capable of igniting in the presence of air or water. Sodium fires are known to disburse radioactivity into the

- 10 -

PRINTED ON
RECYCLED PAPER

air and over a wide area. These accidents, blasts, fires and releases have and continue to expose

Plaintiff as well as her property to significant radioactive and non-radioactive substances which

have migrated into the water and food chain in the area. Thus, Plaintiffs have and continue to

ingest these dangerous substances. The fact of such contamination is virtually certain.

23. In addition to the radioactive accidents at Rocketdyne alleged above, the

Rocketdyne leach field was contaminated with radioactive waste, a high amount of Strontium 90.

This contamination spread off site as well. According to one Rocketdyne report, Rocketdyne did

not discover the contamination for about 14 years. During this time, radioactive soil and

groundwater (as well as vapors and dust particles) migrated and were carried by winds to the

surrounding communities for over a 14- year period at least, thus exposing Plaintiffs to

significant amounts of radiation on an ongoing basis. When the contamination was finally

discovered, the radioactive soil was dug up and shipped to Beatty, Nevada, a radioactive waste

dump.

24. In the late 1970's, the radiologic health section of the State Health Department

imposed additional radiation monitoring around Rocketdyne. According to the California

Secretary of State Task Force on Nuclear Energy and Radioactive Materials, the monitoring was

done to address Rocketdyne's history of detectable off-site contamination. The actual off-site

monitoring done for State Health, however, was done by the Federal Environmental Protection

Agency, which later discontinued its monitoring because of a lack of funds. Thus, Rocketdyne

was responsible for doing its own monitoring of radiation releases and exposures and publishing

yearly composite figures without public access to raw data to identify hot spots or significant

releases which are merged into site or year averages.

- 11 -

25. In addition to the accidents alleged above, Plaintiffs have been made aware by various press reports that as part of the clean-up procedures that large quantities of radioactive materials have been transported by truck to long term radioactive storage facilities in Nevada. According to former Rocketdyne employees, these materials included spent fuel for decladding, raw uranium-235 and highly enriched (bomb grade) concentrations for fuel fabrication, and finished fresh fuel, as well as other radioactive materials. Plaintiffs are informed and believe that there have been numerous accidents involving these radioactive materials while in transport. In addition, there is evidence that transport of, for example, spent fuel, even without any accidents, involve radiation exposure to large numbers of people. For example, Dr. Anthony Nero, a physicist in the energy and environmental division of Lawrence Berkeley laboratory, reported that "**somewhat surprisingly, about half of this dose, the typical radiation received by the public within five miles of a nuclear plant, is contributed by irradiation of these populations by the transport of spent fuel.**" (Emphasis added.) Thus, Plaintiffs have been exposed to these hazardous substances from the mere transport of highly radioactive spent fuel and other radioactive materials near her neighborhood in Bell Canyon.

26. Rocketdyne also engaged in the illegal disposal of radioactive waste which caused further releases extending to at least July 1994.

27. The operations of the subject Rocketdyne facility were veiled in secrecy. The Plaintiffs, like other residents in the surrounding communities, have and continue to use drinking water, breathe the air, radioactive vapors and dust particles blown over their homes, garden and work the soil, and eat citrus from plants growing in the contaminated soil on their properties since 1981. Not only were they unknowingly breathing and ingesting radioactive waste, they also were consuming many other hazardous substances. These hazardous substances were released

- 12 -

1   both through air emissions and into the soil and ground water and migrated through the winds

2   and into the water supplies serving the Bell Canyon community, causing yet further exposure.

3   The Facility is capable of remediation subject to abatement. Unfortunately, the substances which

4   for years have saturated the buildings and soil beneath the Facility are being dug up and

5   disturbed highly toxic dust particles which has and will continue to be carried by the winds over

6   the neighborhood and home of Plaintiffs. According to a recent news article in the Ventura

7   County Star published on November 19, 2020 a new round of contamination clean-up and

8   transportation of the highly dangerous material is to begin in 2021. This program will

9   undoubtedly have a deleterious effect on any potential sale of the property should that become

10  necessary to support and pay for the care Plaintiff Beverly Moistner in her old age.

11       28.      Radiation, radioactive isotopes, cesium and tritium, hexavalent chromium and

12  TCE are all known carcinogens. All of these hazardous substances and others were and continue

13  to be released in large quantities from the Rocketdyne Facility and spread through the

14  communities bordering the Simi Hills including Plaintiffs' property. Radiation exposure is the

15  leading cause of certain forms of cancer.  It is the leading cause of bladder and thyroid cancer,

16  among others.  It is therefore not surprising that these forms of cancer as well as others have

17  emerged in overwhelming clusters in the communities surrounding the base of the Santa Susana

18  Pass. Thyroid cancer, for instance, is a rare form of cancer, affecting only one in 27,000 people,

19  particularly the elderly.  Radiation induced thyroid cancer has a latent period of 4 to 30 years or

20  longer.  Radiation exposure is a well-established cause of bladder cancer. The atomic bomb

21  experience from Hiroshima and Nagasaki suggests that radiation induced bladder cancer occurs

22  15 to 20 years after exposure, also a long latent period. Radiation exposure is a well-established

- 13 -

PRINTED ON
RECYCLED PAPER

cause of skin cancers and colon cancer such as Plaintiff Beverly Moistner and Plaintiff Todd Moistner have suffered.

29.   As a direct and proximate result of the contamination caused by defendants as alleged herein, Plaintiffs have been and continue to be significantly exposed to radioactive and non-radioactive hazardous substances, most of which are known carcinogens. By virtue of this exposure, Plaintiffs have suffered and continue to suffer various forms of cancer. As a result of the cancers that both Plaintiffs have suffered, they each will be subject to medical monitoring and surveillance for the rest of their natural lives.  Plaintiffs are entitled to be compensated for the injuries caused by the subject contamination including but not limited to, costs to date of medical treatment and rehabilitation, future medical costs and the pain and suffering the Plaintiffs' have suffered from the disease and its treatment. In addition Plaintiff Beverly Moistner has suffered a diminution in the present value of the Bell Canyon property caused by widespread knowledge of the dangers presented to any prospective buyer of the property by the ongoing releases from the Rocketdyne Facility of hazardous substances. Those releases were and continue to be caused by and/or are attributable to defendants, who, at all relevant times, were the operators of the Facility.

## FIRST CAUSE OF ACTION
### (Public Nuisance)
### (Against All Defendants)

30.   Plaintiffs repeat, and by reference incorporate herein, the allegations contained in paragraph 1 through 29, inclusive, above.

31.   Plaintiffs at all times herein mentioned has had the inalienable right to own, enjoy and use the residence and property and to not have that right impaired by the introduction by the Defendant Rocketdyne of hazardous substance into the air which they breath at the property, the

- 14 -

soil surrounding the property and groundwater under the property and to not suffer physical harm from the activities of the defendants.

32.     Defendants have a public duty to conduct their business, and in particular, the storage, containment and disposal of hazardous industrial materials, in a manner that does not damage the public welfare and safety.

33.     At all times mentioned herein, the conduct of defendants caused and continues to cause hazardous radioactive and non-radioactive materials and other toxins to be discharged into the environment specifically of the Plaintiffs Bell Canyon property by the Rocketdyne Facility. These substances contaminated the soil, groundwater and air of that property as well as properties in the surrounding communities.

34.     The aforementioned discharges emanated from land upon which defendants carried on activities in conjunction with the operation of their business, both at all times mentioned herein, and for many years prior thereto.

35.     The aforementioned conduct of defendant constitutes a public nuisance within the meaning of section 3479 of the California Civil Code injurious in that it has been highly and dangerously detrimental to the health of each Plaintiffs and has interfered with the comfortable enjoyment of life and/or property, and/or unlawfully obstructs the free use, in the customary manner, of the Plaintiffs' property including, but not limited to, all uses particular to residential living, recreation, gardening and work. The spoliation of groundwater and/or the soil, as well as the resultant emissions of noxious and toxic vapors and dust particles into the air is a continuing and/or permanent nuisance which adversely impacts the use and/or value of Plaintiffs' property and has caused physical injury to each Plaintiff. This nuisance is properly classified as a continuing nuisance subject to reasonable abatement.

- 15 -

36.     As a direct and proximate result of said wrongful conduct, Plaintiffs have suffered physical and economic damages, including but not limited to, medical expenses, pain and suffering and lost use of property, denial of useful and quiet enjoyment of property, diminution in the fair market value of property, impairment of the salability of the property and losses related to residual toxic contamination, which have caused said property to be stigmatized. The amount of such damages for harm to each Plaintiff and to the Bell Canyon property exceeds $10 million.

37.     As a further and direct result of said wrongful conduct, Plaintiffs have been and continue to be exposed to harmful contaminants and have suffered and continue to suffer injuries.

38.     Unless the nuisance is abated, Plaintiffs' will be subject to additional potential serious physical harm as well as diminution of the Plaintiffs' property and rights of enjoyment which will be progressively further diminished in value.

39.     The nuisance is especially injurious to Plaintiff Beverly Moistner who has not only suffered a painful surgery but also as a property owner who has committed substantial financial resources toward the purchase and development of her property without knowledge of the extent of damages, economic and otherwise, which would result from toxic discharge and/or from vaporization thereof. Plaintiffs have been and will be adversely affected by the nuisance unless and/or until it is abated.

40.     The wrongful acts of defendant were done maliciously, oppressively and fraudulently, and Plaintiffs are entitled to punitive and exemplary damages in an amount to be ascertained according to proof pursuant to California Civil Code Section 3294.

- 16 -

PRINTED ON
RECYCLED PAPER

**SECOND CAUSE OF ACTION**

**(Private Nuisance)**

**(Against All Defendants)**

41.     Plaintiffs repeat, and by reference incorporate herein, the allegations contained in paragraph 1 through 40, inclusive, above.

42.     Plaintiffs at all times herein mentioned have had the inalienable right to own, enjoy and use the residence and property and to not have that right impaired by the introduction by Defendant Rocketdyne of hazardous substance into the air, soil and groundwater and to not suffer physical harm from the activities of the defendants.

43.     Defendants have a public duty to conduct their business, and in particular, the storage, containment and disposal of hazardous industrial materials, in a manner that does not damage the public welfare and safety.

44.     At all times mentioned herein, the conduct of defendants caused and continues to cause hazardous radioactive and non-radioactive materials and other toxins to be discharged into the environment by the Rocketdyne Facility. These substances contaminated the soil, groundwater and air surrounding the Bell Canyon property and residences in the surrounding communities in and around the Rocketdyne Facility and were a proximate cause of the injuries and diseases suffered by each Plaintiff.

45.     The aforementioned discharges emanated from land upon which defendants carried on activities in conjunction with the operation of their business, both at all times mentioned herein, and for many years prior thereto.

46.     The aforementioned conduct of defendant constitutes a private nuisance within the meaning of section 3481 of the California Civil Code in that it has been to the health of each Plaintiffs and has interfered with the comfortable enjoyment of life and/or property, and/or

- 17 -

PRINTED ON
RECYCLED PAPER

unlawfully obstructs the free use, in the customary manner, of the Plaintiffs' Bell Canyon property including, but not limited to, all uses particular to residential living, recreation, gardening , and work. The spoliation of groundwater and/or the soil, as well as the resultant emissions of noxious and toxic vapors and dust particles into the air is a continuing and/or permanent nuisance which adversely impacts the use and/or value of the Bell Canyon property. This nuisance is properly classified as a continuing nuisance subject to reasonable abatement.

47.   As a direct and proximate result of said wrongful conduct, Plaintiffs have suffered physical and economic damages, including but not limited to, medical expenses, pain and suffering and lost use of property, denial of useful and have suffered economic damages, including but not limited to, lost use of property, denial of useful and quiet enjoyment of property, diminution in the fair market value of property, impairment of the salability of the property and losses related to residual toxic contamination, which have caused said property to be stigmatized. The amount of such damages exceeds $10 million.

48.   As a further and direct result of said wrongful conduct, Plaintiffs were exposed to harmful contaminants and have suffered and continue to suffer physical injuries, pain and suffering.

49.   Unless the nuisance is abated, Plaintiffs' personal and property and rights of enjoyment will be progressively further diminished in value.

50.   The nuisance is especially injurious to Plaintiff Beverly Moistner who has not only suffered a painful surgery but as a property owner who has committed substantial financial resources toward the purchase and development of her property without knowledge of the extent of damages, economic and otherwise, which were resulting from toxic discharge and/or from

- 18 -

1   vaporization thereof. Plaintiffs have been and will be adversely affected by the nuisance unless

2   and/or until it is abated.

3       51.    The wrongful acts of defendant were done maliciously, oppressively and

4   fraudulently, and plaintiff is entitled to punitive and exemplary damages in an amount to be

5   ascertained according to proof pursuant to California Civil Code Section 3294.

6

7                          **THIRD CLAIM FOR RELIEF**

8                   **(Strict Liability For Ultra-Hazardous Activity)**

                          **(Against All Defendants)**

9       52.    Plaintiffs repeat and by reference incorporate herein the allegations contained in

10  paragraphs 1 through 51, inclusive, above.

11

12      53.    "The doctrine of ultrahazardous activity provides that one who undertakes an

13  ultrahazardous activity is liable to every person who is injured as a proximate result of that

14  activity, regardless of the amount of care he uses." *Pierce v. Pacific Gas & Electric Co.* (1985)

15  166 Cal.App.3d 68, 85. The use of hazardous industrial material including those containing

16  radiation and radioactive isotopes, cesium, tritium, hexavalent chromium, TCE and other

17  hazardous substances in the activities of defendant hereinabove described as well as the storage

18  and/or disposal of the same resulting therefrom, are all ultra-hazardous activities in that:

19

20      A.    There necessarily exists a risk of serious harm to the person, land or chattels of

21  others in the use, storage and/or disposal of hazardous waste, which cannot be eliminated by the

22  exercise of the utmost care;

23      B.    Said use, storage and/or disposal of hazardous materials as undertaken by

24  defendant are not matters of common usage, as it is not customarily carried on by the great mass

25  of mankind or many people in the community;

26

27

28                              - 19 -

C.     The solvents, hazardous wastes and byproducts of said activities involving the use, storage, and/or disposal of said materials are dangerous and highly toxic compounds, are known to be carcinogens, and further known to be ecologically devastating as such if discharged into the air, soil and groundwater;

D.     The use, storage and/or disposal of these hazardous substances into the environment including underground systems, took place with the knowledge and/or awareness that said systems were located within the proximity to homes, schools, parks, businesses and/or private and public property frequented by members of the Bell Canyon community and neighboring communities, who were unaware of the dangers presented;

E. The value of the use of the solvent and chemical compounds in defendant's activities, and the storage and disposal thereof, has little value to Plaintiff, which said value, if any, is outweighed by the dangerous attributes of those substances and the likelihood of harm resulting therefrom.

54.     As a direct and proximate result of said wrongful conduct, Plaintiffs have suffered physical and economic damages, including but not limited to, medical expenses, pain and suffering and lost use of property, denial of useful and quiet  enjoyment of property, diminution in the fair market value of property, impairment of the salability of said property, and losses related to residual toxic contamination, which have caused said property to be stigmatized. The amount of such damages exceeds $10 million.

55.     As a further, direct and proximate result of said wrongful conduct, plaintiff was exposed to harmful contaminants and has suffered and continues to suffer physical injuries.

- 20 -

PRINTED ON
RECYCLED PAPER

56.     The wrongful acts of defendants were done maliciously, oppressively and

fraudulently, and plaintiff is entitled to punitive and exemplary damages pursuant to California

Civil Code Section 3294 in an amount to be ascertained according to proof.

## FOURTH CLAIM FOR RELIEF

### (Negligence)

### (Against All Defendants)

57.     Plaintiff repeats and by reference incorporate s herein the allegations contained in

paragraphs 1 through 56, inclusive, above.

58.     In order to state a cause of action for negligence, a plaintiff must state facts

showing that defendant had a duty to the plaintiff, that the duty was breached by negligent

conduct, and that the breach was the cause of damages to the Plaintiffs.

59.     Defendants, in undertaking the acts as alleged herein, owed a duty to the Plaintiffs

to conduct its activities with reasonable care, and given the ultrahazardous nature of activities

alleged herein, had a heightened duty to undertake no acts that would endanger the public or the

environment. Each of defendant's activities herein alleged contributed in natural and/or

continuous sequence to the discharge of hazardous toxic substances and known carcinogens into

the environment, and each of its actions as alleged herein was a substantial factor in causing the

resultant losses and serious personal injuries to the Plaintiffs.

60.     Defendant had a continuing duty to each Plaintiff to exercise due care and

diligence in operation of its businesses, the storage of all hazardous substances, the construction,

supervision, maintenance and operation of the manufacturing processes and storage facilities for

hazardous materials, and the training and supervision of the personnel used by defendant to

conduct those aspects of its businesses which related to the use, storage, containment and/or

disposal of the same. Defendant also had, and still has, a continuing obligation to protect the

- 21 -

PRINTED ON
RECYCLED PAPER

public welfare, its natural resources, and to clean up the affected sites and to eliminate all their

harmful consequences. Defendant also had, and still has, a duty to organize, fund and implement

adequate clean up procedures and to prevent ongoing damage to plaintiff.

61.     At all times mentioned herein, defendants breached their duty to Plaintiffs by

failing to exercise ordinary care and due diligence in negligently permitting the circumstances to

exist that led to the release of radioactive and non-radioactive and toxic substances including, but

not limited to, the negligent operation, maintenance, and inspection of their business, as well as

the design, manufacture, assembly and related activities associated with the use, storage,

containment and/or disposal of hazardous substances as part of their activity. Defendants were

also negligent in not timely discovering the off-site leach field contamination for many years and

notifying the Plaintiffs that they each were in harm's way.

62.     At all times mentioned herein, defendant, through its negligence as herein alleged,

ignored its responsibilities to Plaintiffs, and unreasonably jeopardized the environment and

specifically the health and safety of each Plaintiff and their property.

63.     As a direct and proximate result of said wrongful conduct, Plaintiffs were each

exposed to harmful radioactive and non-radioactive contaminants and each has suffered

permanent and life-threatening injuries. Plaintiffs have suffered physical and economic damages,

including but not limited to, medical expenses, pain and suffering and lost use of property, denial

of useful and quiet has suffered injuries and/or economic damages including, but not limited to,

lost use of property, denial of useful and quiet enjoyment of her property, diminution in the fair

market value of property, impairment of the salability of said property, and losses related to

residual toxic contamination, which has caused said property to be stigmatized. The amount of

such damages exceeds $10 million.

- 22 -

64.     The wrongful acts of defendants were done maliciously, oppressively and

fraudulently, and plaintiff is entitled to punitive and exemplary damages pursuant to California

Civil Code Section 3294 in an amount to be ascertained according to proof.

## FIFTH CLAIM FOR RELIEF
### (Negligence per se)
### (Against All Defendants)

65.     Plaintiffs repeat, and by reference incorporate herein, the allegations contained in

paragraphs 1 through 64, inclusive, above.

66.     Defendants have breached numerous legal duties to Plaintiffs in that it has

negligently, carelessly and recklessly generated, handled, stored, treated, disposed of and failed

to control and contain radioactive and non-radioactive hazardous materials including but not

limited to Plutonium, radioactive isotopes tritium and cesium, hexavalent chromium, and TCE,

as well as other hazardous substances, into the surrounding environment and community, thereby

subjecting Plaintiffs who resided there and owned real property to an unreasonable risk of

harm. Defendants also negligently, carelessly and recklessly failed to warn the Plaintiffs of the

releases and/or threatened releases of hazardous substances into the environment and

communities surrounding the facility and of the reasonably foreseeable effects of such releases

including but not limited to the very real physical harm that Plaintiffs' have and continue to

suffer.

67.     Defendant's generation, handling, storage, treatment, and disposal of plutonium,

cesium, tritium, hexavalent chromium, and TCE, and other toxic solvents and hazardous

substances, at the Rocketdyne Facility, and its failure to control and contain the same within the

confines of the Facility, constituted numerous and repeated violations of state and federal

- 23 -

environmental health and safety statutes and regulations, and accordingly, defendant's actions have been negligent as a matter of law.

68.     The release of radioactive and non-radioactive hazardous and toxic substances into the environmental ordinarily does not occur in the absence of negligence. The release of radioactive and non-radioactive hazardous and toxic substances was caused by agencies or instrumentalities within the exclusive control of defendants. The release of radioactive and non-radioactive hazardous and toxic substances was not due to any voluntary act or contribution on the part of Plaintiffs.

69.     As a direct and proximate result of said wrongful conduct, Plaintiffs have suffered physical and economic damages, including but not limited to, medical expenses, pain and suffering and lost use of property, denial of useful and quiet enjoyment of property, diminution in the fair market value of property, impairment of the salability of said property, and losses related to residual toxic contamination, which have caused said property to be stigmatized. The injuries suffered by the Plaintiffs were occurrences the nature of which the state and federal environmental health and safety statutes and regulations were designed to prevent. The amount of such damages exceeds $10 million.

70.     The wrongful acts of defendants were done maliciously, oppressively and fraudulently, and plaintiff is entitled to punitive and exemplary damages pursuant to California Civil Code Section 3294 in an amount to be ascertained according to proof.

## SIXTH CLAIM FOR RELIEF
### (Trespass)
### (Against All Defendants)

71.     Plaintiffs repeat, and by reference incorporate herein, the allegations contained in paragraphs 1 through 70, inclusive, above.

- 24 -

72.     In California, the elements for a cause of action for trespass are: (1) plaintiff's lawful possession or right to possession, as owner or otherwise, of described property; (2) defendant's wrongful act of trespass on the property; and (3) damage to plaintiff proximately caused by the trespass.

73.     Plaintiff Beverly Moistner, at all times herein mentioned, had interest and title in her Bell Canyon property, and the right to quiet and useful enjoyment thereof, as well as her surrounding living environment, including air, soil and water. As a result of the intentional, reckless or negligent conduct of defendants, as alleged herein, the discharge of toxic contaminants spoiled the air, ground water and/or soil and migrated into Plaintiffs' Bell Canyon home and water supplies which in turn spawned toxic vapors and byproducts to invade and/or irreparably damage Plaintiffs' interest in water, soil, property and air. The amount of such damages exceeds $10 million.

74.     As a direct and proximate result of said wrongful conduct, Plaintiffs have suffered physical and economic damages, including but not limited to, medical expenses, pain and suffering and lost use of property, denial of useful and quiet enjoyment of property, diminution in the fair market value of property, impairment of the salability of said property, and losses related to residual toxic contamination, which have caused said property to be stigmatized. The amount of such damages exceeds $10 million.

75.     Defendants acts and omissions which constitute trespass as described herein were committed with malice, fraud and oppression - as defined in California Civil Code Section 3294, thereby entitling plaintiff to exemplary or punitive damages.

PRINTED ON
RECYCLED PAPER

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE UNFAIR COMPETITION LAW**

**(For Unfair Competition in Violation of Cal.**

**Bus. & Prof. Code § 17200 *et seq.*)**

**(Against All Defendants)**

76.     Plaintiffs re-allege all the allegations contained in Paragraphs 1 thru 75 as though fully incorporated herein.

77.     Defendants have engaged in deceptive practices, unlawful methods of competition and/or unfair acts as defined by Civil Code §1750, *et seq.,* to the detriment of Plaintiffs without probable cause and with malice.  Plaintiffs have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendants alleged herein.

78.     Defendants intentionally, knowingly, and unlawfully perpetrated harm upon Plaintiffs as a direct and proximate result of the operation of the "Rocketdyne Facility", and the spills and releases of hazardous radioactive and non-radioactive toxic substances including, but not limited to, plutonium, uranium, radioactive isotopes cesium and tritium and carcinogenic chemical compounds, including hexavalent chromium and trichloroethylene (TCE), as well as other toxic solvents, into the environment and into the air, soil and ground water. Plaintiff has been significantly exposed to the known hazardous radioactive and toxic substances released into the environment by defendants from the Rocketdyne Facility and seeks damages for the personal injury suffered by her, property damages and loss of value, compensatory and punitive damages together with attorneys' fees and legal costs and interest to the extent allowable by law, and such other and further relief as may be just and equitable.

79.     The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et

- 26 -

1   seq. ("UCL"), defines unfair competition to include any "unlawful," "unfair," or "deceptive"

2   Late Fee act or practice. Cal. Bus. & Prof. Code § 17200. The UCL authorizes this Court to issue

3   whatever orders or judgments may be necessary to prevent unfair or unlawful practices, or to

4   "restore to any person in interest any money or property, real or personal, which may have been

5

6   acquired by means of such unfair competition." *Id.* § 17203.

7         80.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court

8   permanently enjoining defendants from continuing to engage in their unfair

9   conduct as alleged herein. Plaintiff also seeks, *inter alia,* an order requiring Defendants to:

10        i.    Immediately cease their unlawful acts and practices;

11        ii.    Make full restitution of all monies wrongfully obtained; and,

12

13        iii.    Disgorge all ill- gotten revenues and/or profits.

14                   **SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE UNFAIR COMPETITION LAW**

15               **(For Unfair Competition in Violation of Cal.**

16               **Bus. & Prof. Code § 17200 *et seq.*)**

17                    **(Against All Defendants)**

18         81.    Plaintiffs re-allege all the allegations contained in Paragraphs 1 thru 80 as though

19   fully incorporated herein.

20         82.    Defendants have engaged in deceptive practices, unlawful methods of

21   competition and/or unfair acts as defined by Civil Code § 1750, *et seq.,* to the detriment of

22

23   Plaintiffs without probable cause and with malice. Plaintiff has suffered harm as a

24   proximate result of the violations of law and wrongful conduct of Defendants alleged herein.

25         83.    Defendants intentionally, knowingly, and unlawfully perpetrated harm upon

26   Plaintiffs as a direct and proximate result of the operation of the "Rocketdyne Facility", and

27   the spills and releases of hazardous radioactive and non-radioactive toxic substances

28                      - 27 -

including, but not limited to, plutonium, uranium, radioactive isotopes cesium and tritium and carcinogenic chemical compounds, including hexavalent chromium and trichloroethylene (TCE), as well as other toxic solvents, into the environment and into the air, soil and ground water. Plaintiffs has been significantly exposed to the known hazardous radioactive and toxic substances released into the environment by defendants from the Rocketdyne Facility and seeks damages for the personal injury suffered by each Plaintiff, property damages and loss of value, compensatory and punitive damages together with attorneys' fees and legal costs and interest to the extent allowable by law, and such other and further relief as may be just and equitable.

84.     The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"), defines unfair competition to include any "unlawful," "unfair," or "deceptive" Late Fee act or practice. Cal. Bus. & Prof. Code § 17200. The UCL authorizes this Court to issue whatever orders or judgments may be necessary to prevent unfair or unlawful practices, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." *Id.* § 17203.

85.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court permanently enjoining defendants from continuing to engage in their unlawful conduct as alleged herein. Plaintiff also seeks, *inter alia,* an order requiring Defendants to:

i.      Immediately cease their unlawful acts and practices;

ii.     Make full restitution of all monies wrongfully obtained; and,

iii.    Disgorge all ill- gotten revenues and/or profits.

- 28 -

**PRAYERS**

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. For a permanent injunction enjoining Defendants, their partners, joint ventures, subsidiaries, agents, servants, and employees, and all persons acting under, in concert with them directly or indirectly, or in any manner, from in any way engaging in the unfair practices and violations of law set forth herein;

2. For full restitution of all funds acquired from Defendants' unfair and other violations of law, including disgorgement of fees and profits;

3. For imposition of a constructive trust upon all monies and assets acquired as a result of their unfair practices;

4. Plaintiffs be awarded costs of suit therein.

5. Plaintiffs be awarded damages for the cancers caused by the Defendants including all related medical costs and related pain and suffering and all loss or diminution in the value of the Bell Canyon property.

6. Plaintiffs be awarded compensatory damages according to proof as to attorneys' fees and costs incurred in successfully litigating this action.

7. That the Court grants Plaintiff any additional awards as it finds just and proper.

Dated: March 1, 2021

_____Anthony Graham_____
Anthony G. Graham
Attorneys for Plaintiffs
BEVERLY MOISTNER
TODD MOISTNER

- 29 -